489 A.2d 254

**Gerald L. MORGAN, Appellee,**

v.

**MONESSEN SOUTHWESTERN RAILWAY COMPANY, a corporation, Appellant.**

Superior Court of Pennsylvania.

Argued Aug. 29, 1984.

Filed March 8, 1985.

Petition for Allowance of Appeal Granted Aug. 29, 1985.

466

Paul A. Manion, Pittsburgh, for appellant.

Thomas Hollander, Pittsburgh, for appellee.

Before ROWLEY, JOHNSON and HESTER, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

This is an appeal from the Judgment entered on the jury's verdict in favor of Gerald L. Morgan, appellee, in the amount of $125,000.00 plus delay damages under Pa.R.C.P. 238, following the trial court's Order dismissing post-trial motions filed by Monessen Southwestern Railway Company (Monessen), appellant. This action was instituted by appellee under the Federal Employers' Liability Act, 45 U.S.C. §§ 51–60 (1976) (FELA), for injuries he suffered in the course of his employment with Monessen. On appeal, appellant first argues that the trial court erred in adding $26,712.50 in delay damages pursuant to Pa.R.C.P. 238 in an action under the FELA. Appellant also contends that a new trial is warranted because the trial court erred in failing to instruct the jury that any damage award for future lost earnings must be reduced to present value.[1] For the following reasons, we affirm.

■ Appellant's initial contention is that the addition of delay damages under Pa.R.C.P. 238 was improper in an FELA case heard in a Pennsylvania court. This issue was resolved by a unanimous panel of our court in *Humphries v. Pittsburgh & Lake Erie Railroad Company*, 328 Pa.Super. 119, 476 A.2d 919 (1984). In *Humphries*, this court held that, "while the FELA does not fix the rate of prejudgment interest, the allowance of such interest pursuant to Rule 238 comports with our understanding of the federal decisional law on the matter." *Id.*, 328 Pa.Superior Ct. at 132, 476 A.2d at 926. Our decision in *Humphries* is controlling in this case and, thus, the trial court's addition of delay damages to the jury's verdict was proper.

---

1. Appellant does not allege any error in the trial regarding the verdict on liability.

■ Appellant's next contention is that the trial court erred in failing to instruct the jury that an award for future lost earnings was to be calculated on the basis of net earnings after taxes in accordance with *Norfolk and Western Railway Company v. Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980). We have carefully reviewed the charge given by the trial court and we find that it was in keeping with the principles espoused in *Liepelt;* accordingly, we find no error in the charge regarding this issue which warrants the grant of a new trial.

Appellant's final contention is that a new trial is required because the trial court failed to charge the jury, as requested by appellant, that a damage award for future lost earnings must be reduced to its present value. The trial court charged the jury in accordance with the "total offset method" for determining future earning capacity, as set forth in *Kaczkowski v. Bolubasz,* 491 Pa. 561, 421 A.2d 1027 (1980), which equates the rate of future inflation with that of future interest rates and eliminates the need for adjustment of a verdict based upon these factors. (See N.T., December 4, 1982, pp. 701–701). The trial court refused to give appellant's requested jury instruction regarding present worth reasoning that, under *Kaczkowski,* it is unnecessary to burden the jury with such instructions. The court also relied upon the decision in *Pfeifer v. Jones & Laughlin Steel Corp.,* 678 F.2d 453 (3d Cir.1982) *vacated* 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983), wherein the "total offset method" was approved by the Third Circuit for use in federal actions under the Longshoremen's and Harbor Workers' Compensation Act.

During the pendency of this appeal, the United States Supreme Court reversed the Third Circuit's decision in *Jones & Laughlin Steel Corp. v. Pfeifer,* 462 U.S. 523, 103 S.Ct. 2541, 76 L.Ed.2d 768 (1983). At oral argument in this case, the parties' were instructed to file supplemental briefs addressing the recent decision of the Court in *Pfeifer,* and we have had the benefit of reviewing their briefs on this issue.

In *Pfeifer*, the United States Supreme Court held that it was error for the Third Circuit to adopt the total offset rule of *Kaczkowski* as a *mandatory* rule for use in the federal courts; hence, the trial court's judgment utilizing that rule was set aside. Nonetheless, the Court declined to establish a set rule as the exclusive method in all federal trials for calculating an award for lost earnings in an inflationary economy. The Court observed:

> The litigants and the amici in this case urge us to select one of the many rules that have been proposed and establish it for all time as the exclusive method in all federal trials for calculating an award for lost earnings in an inflationary economy. We are not persuaded, however, that such an approach is warranted. Accord, *Cookson v. Knowles, supra,* at 574 (Lord Salmon). For our review of the foregoing cases leads us to draw three conclusions. First, by its very nature the calculation of an award for lost earnings must be a rough approximation. Because the lost stream can never be predicted with complete confidence, any lump sum represents only a 'rough and ready' effort to put the plaintiff in the position he would have been in had he not been injured. Second, sustained price inflation can make the award substantially less precise. Inflation's current magnitude and unpredictability create a substantial risk that the damage award will prove to have little relation to the lost wages it purports to replace. Third, the question of lost earnings can arise in many different contexts. In some sectors of the economy, it is far easier to assemble evidence of an individual's most likely career path than in others.

> These conclusions all counsel hesitation. Having surveyed the multitude of options available, we will do no more than is necessary to resolve the case before us. We limit our attention to suits under § 5(b) of the Act, noting that Congress has provided generally for an award of damages but has not given specific guidance regarding how they are to be calculated. Within that narrow con-

text, we shall define the general boundaries within which a particular award will be considered legally acceptable. *Id.* 103 S.Ct. at 2555. With regard to the offset method set forth in *Kaczkowski v. Bolubasz, supra,* the Court stated:

> Although such an approach has the virtue of simplicity and may even be economically precise, we cannot at this time agree with the Court of Appeals for the Third Circuit that its use is mandatory in the federal courts.
>
> \* \* \* \* \* \*
>
> As a result, the judgment below must be set aside. In performing its damages calculation, the trial court applied the theory of *Kaczkowski, supra,* as a mandatory federal rule of decision, even though the petitioner had insisted that if compensation was to be awarded, it 'must be reduced to its present worth.' J.A. 60. (footnotes omitted)

*Id.* 103 S.Ct. at 2557. The Court in *Pfeifer* further directed:

> On remand, the decision on whether to reopen the record should be left to the sound discretion of the trial court. It bears mention that the present record already gives reason to believe a fair award may be more confidently expected in this case than in many. The employment practices in the longshoring industry appear relatively stable and predictable. The parties seem to have had no difficulty in arriving at the period of respondent's future work expectancy, or in predicting the character of the work that he would have been performing during that entire period if he had not been injured. Moreover, the record discloses that respondent's wages were determined by a collective bargaining agreement that explicitly provided for 'cost of living' increases, J.A. 310, and that recent company history also included a 'general' increase and a 'job class increment increase.' Although the trial court deemed the latter increases irrelevant during its first review because if felt legally compelled to assume they would offset any real interest rate, further study of them on remand will allow the court to determine whether that assumption should be made in this case.

## IV

We do not suggest that the trial judge should embark on a search for 'delusive exactness.' It is perfectly obvious that the most detailed inquiry can at best produce an approximate result. And one cannot ignore the fact that in many instances the award for impaired earning capacity may be overshadowed by a highly impressionistic award for pain and suffering. But we are satisfied that whatever rate the District Court may choose to discount the estimated stream of future earnings, it must make a deliberate choice, rather than assuming that it is bound by a rule of state law. (footnotes omitted)

*Id.* 103 S.Ct. at 2558.

Thus, the Supreme Court in *Pfeifer* held that it is the trial court's task to determine the appropriate method to be utilized in discounting estimated future earnings under the circumstances of a particular case. However, the Court directed that the trial court in a federal case "must make a deliberate choice, rather than assuming that it is bound by a rule of state law." *Id.* Accordingly, the Court vacated the judgment of the Third Circuit Court of Appeals adopting the "total offset method" as a mandatory rule and remanded the case to allow the court to determine whether the "total offset" formula was the appropriate method to apply in arriving at a future lost earnings figure under the particular circumstances of that case.

Although *Pfeifer* involved a cause of action under § 5 of the Longshoremen's and Harbor Workers' Compensation Act, we are persuaded that the reasoning in that case is applicable to FELA cases brought in state court since the FELA, like the Longshoremen's Act, provides generally for a damage award, but gives no specific guidance regarding how that award is to be calculated. *See* 45 U.S.C. § 51; *Pfeifer*, 103 S.Ct. at 2555. The United States Supreme Court has previously determined that questions concerning the measure of damages in an FELA action are federal in character, and this is true even if the suit is instituted in state court. *Norfolk & Western Railway Company v.*

*Liepelt,* 444 U.S. 490, 100 S.Ct. 755, 62 L.Ed.2d 689 (1980). In *Liepelt,* the Appellate Court of Illinois held that the trial court had not erred in refusing to instruct the jury as to the non-taxability of an award in an FELA case and in excluding evidence of the effect of income taxes on future earnings of the decedent. The Illinois Supreme Court denied leave to appeal and the United States Supreme Court granted certiorari. In reversing the decision of the Illinois appeals court, the Supreme Court held that the question whether it was error for the state court to refuse the instruction and to exclude evidence concerning federal taxes was "a matter governed by federal law." *Id.* at 492–93, 100 S.Ct. at 757. Thus, the Court observed that the practice being followed by a particular state—in that case, Illinois—was subject to change by a decision of the United States Supreme Court. This approach is consistent with Congress' intent to "create uniformity throughout the Union" with respect to railroads' financial responsibility for injuries to their employees under the FELA. *Id.* at 493 n. 5, 100 S.Ct. at 755 n. 5.

■ The dissenting opinion in *Liepelt,* authored by Justice Blackmun and joined by Justice Marshall, concluded that jury instructions regarding the taxability of a damages award were "cautionary in nature" and that whether such instructions should be given was a matter governed by state law when an FELA action is brought in state court. *Id.* at 503–504, 100 S.Ct. at 762–63. Justice Blackmun stated that questions of procedure and evidence in cases arising under the FELA should properly be determined according to the law of the forum. Nonetheless, this argument was not adopted by the majority in *Liepelt,* and we are therefore bound by the Court's determination that questions concerning the measure of damages in an FELA action are governed by federal law.

■ Accordingly, we are compelled to analyze the case at bar in light of the principles announced by the United States Supreme Court in *Pfeifer, supra.* Nonetheless, we do not read *Pfeifer* as necessarily precluding use of the total offset

method set forth in *Kaczkowski v. Bolubasz, supra,* or an approved variation thereof. Thus, we do not agree with the interpretation given *Pfeifer,* by the Third Circuit in their recent opinion in *DiSabatino v. National Railroad Passenger Corp.,* 724 F.2d 394 (3rd Cir.1984).

The trial in *DiSabatino* occurred prior to the Supreme Court's decision in *Pfeifer.* In accordance with the total offset method, which had been approved by the Third Circuit, no evidence was presented on reduction of future lost earnings to present worth, and the jury was not instructed on that theory. It is not clear whether the jury was actually instructed regarding the total offset theory. Following the verdict, the Supreme Court's decision in *Pfeifer* was filed. On appeal, the court in *DiSabatino* held that a *new trial* on damages was mandated because the jury had not been instructed to reduce any award for future lost earnings to its present worth. Thus, *DiSabatino* appears to interpret the *Pfeifer* decision as disallowing use of the total offset method in an FELA case and requiring reduction of an award for future lost earnings by some percentage in order to arrive at present value.

We do not interpret the Supreme Court's decision in *Pfeifer* as precluding utilization of the total offset method, if appropriate, in a case under the FELA. The Court described at least three "legally acceptable" techniques for arriving at an award for future lost income. *See Shaw v. United States,* 741 F.2d 1202, 1207 (9th Cir.1984) (offset method referred to as one of three acceptable methods for determining appropriate discount rate in case under Federal Torts Claims Act). *See generally, Culver v. Slater Boat Co.,* 722 F.2d 114 (5th Cir.1983). The Court expressly refused to adopt any one method as the exclusive method to be employed in federal trials under the Longshoremen's Act or federal trials generally. Rather, the Court directed that the trial judge must make a conscious reasoned choice among the approved methods for arriving at a lost earnings figure, taking interest and inflation rates into account and considering the circumstances of the industry and the par-

ticular plaintiff involved. If the relevant factors in a particular case support an assumption that the inflation rate offsets any "real" interest rate, then application of the total offset theory would be appropriate and consistent with the reasoning in *Pfeifer.* 103 S.Ct. at 2558. We are convinced that if a trial judge chooses an approved method of computation and gives his reasons for doing so, the Supreme Court's direction in *Pfeifer* is satisfied.

 In the instant case, the trial judge "spent considerable time" determining whether an instruction on present worth should be incorporated in her charge to the jury. (N.T., Vol. V, December 4, 1981, pp. 577–80). She concluded, however, that a present worth instruction was not required, in light of the rule set forth in *Kaczkowski v. Bolubasz, supra.* Although the *Pfeifer* decision requires trial judges to make a reasoned choice among the legally acceptable methods for arriving at a lost earnings figure, the trial judge's decision in this case cannot be faulted since she did not have the benefit of reviewing that decision. Thus, rather than remanding this case for consideration of the principles announced in *Pfeifer,* we have undertaken a review of the record before us in order to ascertain whether the total offset method was an appropriate method to be utilized under the particular facts and circumstances of this case. On the basis of the record certified to us on appeal, we find that application of the total offset method was appropriate in this case and that its application did not result in prejudicial error. Although appellant submitted a requested instruction concerning reduction of a lost earnings award to present value, and now urges this court to reverse the judgment because the trial judge did not so charge the jury, appellant presented no evidence that would have supported such an instruction. If appellant wanted the trial court to instruct the jury regarding an alternative discount method, evidence relevant to that method should have been offered. *See O'Rourke v. Eastern Airlines, Inc.,* 730 F.2d 842, 858 (2nd Cir.1984); *DiSabatino v. National Railroad Passenger Corp.,* 724 F.2d at 396.

Accordingly, we find that the trial court's reliance on the total offset method for determining present worth of a future lost earnings award was not erroneous in light of the evidence submitted in this case. Judgment affirmed.